**Jerry PERRY, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 02–4601.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 29, 2004.

Decided March 8, 2004.

---

Martin A. Kascavage, Schoener & Kascavage, Philadelphia, PA, for Petitioner.

David V. Bernal, Douglas E. Ginsburg, John M. McAdams, Jr., Russell J.E. Verby, Elizabeth Layton, United States Department of Justice, Washington, DC, for Respondent.

Before NYGAARD and FUENTES, Circuit Judges, and O'NEILL,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Appellant Jerry Perry is a 46–year old Liberian who married a U.S. citizen, Francine Bennett (a/k/a Francine Perry) in 1986, and who subsequently became a conditional permanent resident of the U.S. In 1989, Perry and Bennett applied to remove the conditional status of his residency, but the INS did not respond by the time they got divorced, in 1993. In 1994, the INS informed Perry that he would be deported for participating in a sham marriage calculated to effect his entry into the U.S. At an immigration hearing in November 1996, Perry testified on his own behalf. The INS rebutted his testimony with its own witness, Durrell Wilks, a friend of Bennett's who testified that Perry's marriage was a sham.[1] The IJ ordered Perry's deportation, finding that Wilks was more credible than Perry in his account of the Perry–Bennett marriage. The BIA subsequently affirmed the IJ without any opinion. On appeal, Perry argues that the IJ's finding of a sham marriage was error, largely based on the IJ's improperly crediting Wilks's testimony over Perry's. Specifically, Perry asserts that Wilks's testimony was extremely unreliable and rife with inadmissible hearsay. Alternatively, Perry contends that he should be granted an extreme hardship waiver because the transition back to Liberia would be too difficult for him. Because we do not find

---

* Honorable Thomas N. O'Neill, Jr., Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Bennett did not testify because none of the parties have been aware of her whereabouts for several years.

that a reasonable fact-finder would be compelled to disagree with the IJ, we affirm the IJ's decision.

## I.

Before the IJ, Perry testified that he met Bennett in September 1986 at a religious service, and the two began dating shortly thereafter. Perry alleged that he and Bennett lived together happily after their marriage until 1989, when he began to suspect that she was using drugs. According to Perry, the drug use culminated in their daughter being stillborn in June 1989. Two years later, Bennett left Perry, who has not seen her since. Finally, Perry testified that he is now remarried to a naturalized U.S. citizen, with whom he has fathered a child. Perry claims that he cannot return to Liberia because it would mean leaving his new family behind, and he would have trouble finding a job and treatment for his high blood pressure in Liberia.

Wilks was the only other witness before the IJ. Wilks testified that Bennett told him that her marriage with Perry was a sham set up by two men named Ben Binda and Augustis Genat, who paid Bennett to marry Perry. Wilks further testified that Binda and Genat paid Wilks for participating in a fraudulent marriage of his own. Contrary to Perry's testimony, Wilks alleged that Bennett actually lived with him from 1986 to about 1990 with their daughter Tiffany, who was born in 1984. Wilks admitted that he was a longtime user of marijuana and crack cocaine. Despite Wilks's history of drug use and his conceded participation in his own sham marriage, the IJ credited his testimony over Perry's largely based on the IJ's belief that Wilks had nothing to gain from his testimony. Indeed, the IJ concluded that Wilks faced the chance of being harmed by testifying because his testimony included self-incriminating admissions.

## II.

The parties agree that this Court reviews the IJ's findings of fact to determine whether they are supported by substantial evidence. *E.g., Immigration and Naturalization Serv. v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Especially in the context of credibility determinations, the "substantial evidence" standard mandates a high degree of deference. *Id.* This standard has been codified in statutory law: "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *accord, e.g., Lukwago v. Ashcroft,* 329 F.3d 157, 167 (3rd Cir.2003). Thus, this Court's role is not to second-guess the IJ, or to weigh the evidence, but to overturn the IJ only if the facts compel us to conclude to the contrary.

## III.

■ Perry first tries to undermine Wilks's credibility, arguing that Wilks's testimony was rife with troubling inconsistencies and omissions. All Perry can point to, however, are instances where Wilks had trouble remembering collateral details of his testimony, such as exact dates of certain events. Perry does not offer any examples of Wilks contradicting himself as to any central matter of his testimony. Perry also impeaches Wilks with his history of drug use and participation in a sham marriage, but the IJ could permissibly believe that Wilks was telling the truth despite his troubled past. Finally, Perry attacks the IJ's conclusion that Wilks's testimony was believable because he had no reason to lie. Perry contends that Wilks could have been testifying in return

for more lenient treatment from the government for his admitted participation in a fraudulent marriage, a federal offense.

Although it is true that Wilks may have had a personal interest in testifying, we cannot say that the IJ erred in finding him more credible than Perry. Even if Wilks was testifying in part to improve his standing with federal prosecutors, he was not promised immunity for his testimony, and a factfinder could reasonably still deem Wilks to have less reason for lying than Perry. Furthermore, Perry's credibility was undercut by his inability to remember Bennett's daughter's name, or information like Bennett's residence or place of work during their courtship. In essence, the IJ had two incompatible testimonial accounts from Wilks and Perry, and chose to credit the former because of their demeanors and their relative interests in the case. At most, Perry has shown that the IJ *could have* plausibly credited Perry over Wilks; Perry has not met his burden, however, of showing that the IJ was *compelled* to credit Perry over Wilks. Consequently, we affirm the IJ's finding that Perry's marriage was in bad faith.[2]

### IV.

Perry's alternate argument, that moving back to Liberia would pose too great a hardship, is also unavailing. Perry was not able to corroborate the existence of his new wife and daughter, and as even Perry admits, the fact that life would be harder in Liberia is not enough to show the extreme hardship required for a waiver of his deportation for fraud. Perry complains that the IJ did not exhaustively

discuss the relevant factors to consider for extreme hardship, *see Matter of Ige*, 20 I. & N. Dec. 880, 882–83, 1994 WL 520996 (1994); and explain how each weighed against Perry. *Ige* never requires the IJ to make any such comprehensive analysis, however, and puts the burden on petitioners to justify the "exceptional" waiver. *Id.* at 882. Moreover, *Ige* is clear that the extreme hardship waiver is to be narrowly construed and not freely given. *Id.* Here, Perry simply did not submit any evidence that would justify, let alone compel, a finding of extreme hardship in his deportation to Liberia. Accordingly, we deny the petition for review.

---

**2.** Perry also claims that he was denied due process by the use of hearsay affidavits against him at the hearing. The affidavits would only impair his due process rights if their admission was fundamentally unfair, however, and Perry does not come close to

meeting this standard. Moreover, the particular affidavits that Perry is objecting to did not seem to play a large role in the IJ's decision relative to, for example, Wilks's testimony, so there is no indication that Perry suffered any prejudice.